Glenn C. JOHNSON

v.

CITY OF PORT ARTHUR.

No. 1:95–MC–18.

United States District Court,
E.D. Texas,
Beaumont Division.

June 30, 1995.

Glenn C. Johnson, pro se.

*MEMORANDUM ORDER ADOPTING THE MAGISTRATE JUDGE'S RE-PORT AND RECOMMENDATION*

JOE J. FISHER, District Judge.

The court heretofore ordered that this matter be referred to the Honorable Earl S. Hines, United States Magistrate Judge, at Beaumont, Texas, for consideration pursuant to applicable laws and orders of this court. The court has received and considered the Report of the United States Magistrate Judge pursuant to such order, along with the record, pleadings and all available evidence. No objections to the Report of the United States Magistrate Judge were filed by the parties.

Accordingly, the findings of fact and conclusions of law of the magistrate judge are correct and the report of the magistrate judge is ADOPTED. It is therefore

ORDERED and ADJUDGED that movant's motion to proceed *in forma pauperis* is GRANTED. It is further

ORDERED and ADJUDGED that movant is GRANTED a reasonable period of time, up to and including July 31, 1995, within which to file his Title VII complaint on a *pro se* basis or through privately retained counsel, if he wishes to proceed on that claim. It is further

ORDERED and ADJUDGED that movant's motion for appointment of counsel is DENIED.

Failure of movant to proceed within such time will result in the automatic termination of this proceeding without the necessity of further order of the Court.

## REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

HINES, United States Magistrate Judge.

Glenn C. Johnson moves for *in forma pauperis* status and appointment of counsel in a proposed suit against his former employer, the City of Port Arthur ("the City"), pursuant to the Americans With Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12101 *et seq.* Movant alleges his former employer, the City, failed to accommodate him after he became a qualified person with a disability, and therefore violated the ADA.

The motion was referred to the undersigned for hearing and issuance of a report

and recommendation as to whether the motion should be granted. A hearing was convened May 2, 1995 in Beaumont, Texas at the Jack Brooks Federal Building. Movant appeared to present his motion and respond to questions.

Prior to the hearing, the court ordered movant to produce for the court's inspection a copy of his Equal Employment Opportunity Commission ("EEOC") investigative file. The EEOC file was received by the court and reviewed prior to the hearing. This report is based upon movant's complete court file, the EEOC investigative file, movant's testimony, and documentation provided at the hearing.

### I. The Threshold Question: Is The Motion Moot Because The Claim Is Barred By Limitations?

It is appropriate first to examine whether movant's claim is time barred. If so, an examination of the merits of his motion for appointment of counsel would be purely academic.

■ Like cases under Title VII, individuals are required by statute to file their complaint in federal court within the ninety days following the Commission's notice to them that it has not filed a civil action. *Sheppard v. Texas Dep't of Transportation,* 158 F.R.D. 592 (E.D.Tex.1994) (Schell, C.J.). The ninety-day period of limitations begins to run on the date that the EEOC right-to-sue letter is delivered to the claimant. *Ringgold v. National Maintenance Corp.,* 796 F.2d 769 (5th Cir.1986). Where there is an ambiguity as to when notice is given, courts recognize that the ninety days begin to run when the aggrieved party knows EEOC has completed its efforts. *Zambuto v. American Telephone and Telegraph Co.,* 544 F.2d 1333 (5th Cir. 1977).

In this case, movant's notice of right to sue letter was postmarked November 30, 1994. He tendered his original complaint for filing on February 23, 1995. This was within the ninety allotted days. Therefore, his ADA suit is not barred by limitations.

### II. In Forma Pauperis Application

■ In *Adkins v. E.I. DuPont de Nemours & Co.,* 335 U.S. 331, 69 S.Ct. 85, 93 L.Ed. 43 (1948), it was held that one need not be absolutely destitute to enjoy the benefit of proceeding *in forma pauperis.* An affidavit to proceed *in forma pauperis* is sufficient if it states that one cannot, because of his poverty, afford to pay for the costs of litigation and still provide for himself and any dependents. *Id.* at 339, 69 S.Ct. at 89.

■ Movant has made a sufficient showing of poverty. Movant has been unemployed since he was terminated from his City employment in March of 1994. He and his wife, who works only sporadically, receive $212 per month in food stamps. The Texas Program for Human Services arranges for payment of his utility bills, which average $60 to $70 per month.

Movant testified he received $3000 in a lump sum from the City's retirement plan, but this money has been dissipated for living expenses. He no longer receives workers' compensation, which was paid from November, 1993 through August of 1994, in increments of $197 per week. His only other asset is a 1978 van, for which he paid $1500 in October of 1994.

With regard to liabilities, movant stated he is responsible for paying $200 per month in child support, but has fallen behind in recent months due to his unemployment. He also has fallen behind on rent payments. He reports no savings.

These facts favor granting movant's motion to proceed *in forma pauperis.*

### III. Motion for Appointment of Counsel

#### A. Governing Principles

■ An ADA plaintiff has no absolute right to an appointed counsel. Rather, the decision of whether to provide counsel lies solely within the discretion of the court. *See Caston v. Sears, Roebuck and Co.,* 556 F.2d 1305 (5th Cir.1977); *Neal v. IAM Local Lodge 2386,* 722 F.2d 247 (5th Cir.1984); *Gonzalez v. Carlin,* 907 F.2d 573 (5th Cir. 1990).

■ Case law regarding the ADA, especially in the Fifth Circuit, is sparse. However, other courts utilize the same analysis for appointment of counsel requests in ADA cases as in Title VII cases. *See, e.g., Filec v. Chicago Transit Authority,* 156 F.R.D. 166 (N.D.Ill.1994). Therefore, in exercising its discretion, the district court should consider the following relevant factors:

1) Whether the complainant has the financial ability to retain counsel;
2) Whether the complainant has made a diligent effort to retain counsel; and
3) Whether the complainant has a meritorious claim.

*Caston v. Sears, Roebuck & Company, supra; Neal v. IAM Local Lodge 2386, supra,* and *Gonzalez v. Carlin, supra.*

## B. *Ability to Afford an Attorney*

■ In analyzing this factor, a substantial showing of poverty as required to proceed *in forma pauperis* is not required. *Ivey v. Board of Regents,* 673 F.2d 266 (9th Cir.1982). There need only be insufficient assets and income to enable movant to afford an attorney to investigate and file his claims. Since movant has met the heavier burden to proceed *in forma pauperis,* it follows that he has met the requirement of indigence to necessitate a favorable finding on this factor.

## C. *Efforts to Secure Counsel*

■ To be eligible for appointed counsel, movant must make "a reasonably diligent effort under the circumstances to obtain counsel." *Bradshaw v. Zoological Soc. of San Diego,* 662 F.2d 1301 (9th Cir.1981); *Caston,* 556 F.2d at 1309. *Caston* suggests that a significant inquiry on this issue is whether the complainant has pursued the possibility of a contingent fee arrangement in her efforts or attempts to locate an attorney. *Id.*

■ At the hearing, movant testified that he had spoken to "many attorneys" about representation in this case. He stated he spoke with Jeffrey Brannick, Esq. of Provost & Umphrey, the firm of Testa & Testa, and East Texas Legal Services. Representation was declined. Movant also explained his wife had embarked on a letter writing campaign in hopes of obtaining counsel or other assistance, to no avail.

Movant was reasonably diligent in his efforts to secure counsel. Therefore, the analysis on this factor points in favor of granting the motion.

## D. *The Merits of the Case*

■ Examination of potential merits is most important, considering the unfairness of imposing involuntary servitude upon a member of the bar in a patently frivolous case. This factor also is the most difficult to apply.

■ When considering the merits, the determination reached by the EEOC should not be ignored. On the other hand, the court cannot give preclusive effect to the EEOC determination. The court should inquire as to the validity of the EEOC's determination. *Caston,* 556 F.2d at 1309.

■ Examination of the merits *sua sponte* before the defendant has been required to answer is akin to a frivolousness review of a general *in forma pauperis* proceeding. *See* 28 U.S.C. § 1915(d). The procedure cannot serve as a factfinding process for the resolution of disputed facts. *Denton v. Hernandez,* 504 U.S. 25, 31, 112 S.Ct. 1728, 1733, 118 L.Ed.2d 340 (1992).

■ Reduced to simplest terms, frivolous suits are those without an arguable basis in law or fact. *Neitzke v. Williams,* 490 U.S. 319, 325, 109 S.Ct. 1827, 1831, 104 L.Ed.2d 338 (1989). Thus, the duty to screen for frivolousness includes responsibilities to determine first whether the case is based on a recognized legal theory, and second, to make an initial assessment of the movant's factual allegations in light of what movant must eventually prove at trial if movant is to recover on that theory. The court may not construct arguments or legal theories for the plaintiff, but the plaintiff's complaint is to be construed liberally when, as here, the plaintiff is *pro se. See Haines v. Kerner,* 404 U.S. 519, 520, 92 S.Ct. 594, 595, 30 L.Ed.2d 652 (1972).

■ The initial assessment of plaintiff's alleged facts must be weighed in plaintiff's favor, i.e. the court must accept as true

the facts alleged by plaintiff unless they rise to the level of the irrational or the wholly incredible. *Denton,* 504 U.S. at 31, 112 S.Ct. at 1733. Weighing in plaintiff's favor also means indulging all reasonable inferences in movant's behalf. *See Johnson v. Rodriguez,* 943 F.2d 104, 107 (1st Cir.1991), interpreting *Neitzke, supra.* Therefore, if plaintiff's alleged facts are not clearly baseless, and if proven they would support a recognized legal theory of recovery, plaintiff must be given an opportunity to commence the action, irrespective of costs.

## 1. Background

■ Movant was employed by the City as a Maintenance Worker II, or laborer, beginning in January 1990. Movant described his employment as involving strenuous, outdoor labor on a "trouble shooter crew." This crew repaired pipes along city streets, often lifting pipes and utilizing shovels, jackhammers, picks, and other tools to break concrete.

On September 23, 1993, he experienced muscle spasms in his back while at work. After work, movant's wife took him to the emergency room. He was hospitalized for five days and was diagnosed with rhabdomydosis, a disintegrative or degenerative muscle condition.

On November 1, 1993, he returned to work on the orders of Dr. Ezea O. Ede, who advised movant to avoid strenuous activity and heat exposure. The City informed movant there were no light duty positions available at that time, so movant attempted to return to his former position.

He re-injured himself on November 10, 1993. He has not worked since.

On January 28, 1994, movant received a letter from the City stating that the essential functions of his job included intensive labor and the City did not have permanent "light-duty" jobs available. The letter stated the City could not accommodate him without undue hardship and terminated the employment relationship. He was terminated on March 11, 1994.

Movant contends that other workers in similar circumstances were given light duty jobs and the City should have provided him with a light-duty job as an accommodation of his disability.

## 2. Respondent's Position

The employer is not yet before the court. In the capacity of respondent in the EEOC proceedings, the City contended it released movant from employment because it was unable to accommodate him without undue hardship, that is, it did not have any permanent light duty positions available.

The City submitted records at the administrative level showing there were several employee layoffs and budget cuts at the time movant was terminated. Accommodations the City asserted would need to be made included "hiring an additional person to carry out those essential duties which Mr. Johnson could not perform, or ... seeking some form of specialized equipment which would provide Mr. Johnson the required climactic protection while assisting him in carrying out the essential labor (strenuous) activities which are an essential part of the job." The City also claimed movant was given the opportunity to bid on other jobs within the thirty days after his termination, but that he never sought another vacancy.

## 3. EEOC Determination

On November 21, 1994, the EEOC issued a determination stating that:

Examination of the evidence indicates that the Charging Party's physician placed permanent restrictions on him with respect to strenuous activity and heat exposure. Charging Party was unable to perform the essential duties of his position and Respondent was unable to accommodate him without incurring undue hardship. Records show numerous employees have been laid off and the respondent has had several budget cuts.

## 4. Discussion and Analysis

■ To state a prima facie case under the ADA, a plaintiff must show he suffers from a disability, that he is a qualified individual under the Act, that he was subject to adverse employment action, and was replaced with a non-disabled person. *Aikens v.*

*Banana Republic, Inc.,* 877 F.Supp. 1031 (S.D.Tex.1995). A "qualified individual with a disability" is a person who "with or without reasonable accommodation, can perform the essential functions of the employment position that the individual holds or desires." 42 U.S.C. § 12111(8). "Examples of reasonable accommodation include making existing facilities used by employees readily accessible to and usable by an individual; with a disability, restructuring a job, modifying work schedules ..." United States Equal Employment Opportunity Commission, The Americans With Disabilities Act, Questions and Answers 5 (1992) (emphasis added). An accommodation is unreasonable if it would impose an undue hardship on the operation of the employer's program. 45 C.F.R. § 84.12(a).

■■■ The court must examine the essential functions of the job, and then evaluate the medical evidence as to whether the employee can perform those functions. *See Gilbert v. Frank,* 949 F.2d 637 (2d Cir.1991); *Southeastern Community College v. Davis,* 442 U.S. 397, 406, 99 S.Ct. 2361, 2367, 60 L.Ed.2d 980 (1979). Generally, courts hold that creating a new job or changing an employee's essential functions, for example, switching him to light-duty when he has been a laborer, is not a reasonable accommodation. *See, e.g., Taylor v. Garrett,* 820 F.Supp. 933, 938 n. 6 (E.D.Pa.1993).

In this case, there is no dispute movant could not perform the essential duties of his job as a Maintenance Worker II. This position called for strenuous, outdoor activity. Movant stated that "whatever it took to get to the pipe," they utilized, whether it was a pick, shovel, or jackhammer. His condition rendered him incapable of such activity, and precluded him from exposure to heat. Movant acknowledged at the court hearing that he could no longer perform the job he had held. Additionally, in his initial letter to the EEOC, he wrote, "Since I can't do the job no more I think I should be compensated for my pain, suffering agony or something."

■■■ Because movant has admitted he would be unable to perform the essential functions of his employment without accommodation, the court must determine whether he would have been able to perform these functions with a reasonable accommodation. *White v. York Int'l Corp.,* 45 F.3d 357 (10th Cir.1995). Movant acknowledges he wouldn't have been able to handle heavy equipment or stay in the heat for extended periods of time. He does suggest, however, that he would be able to do other City jobs, for example, checking fire hydrants.[1]

A "reasonable accommodation" is defined by the ADA as "modification or adjustments to the work environment, or to the manner of circumstances under which the position held is customarily performed, that enable a qualified individual with a disability to perform the essential functions of that position." 29 C.F.R. § 1630.2(*o*)(ii). Changing movant from a laborer to a "light-duty" worker is not a reasonable accommodation to assist in the performance of his job; it is a completely different job. It is a change in the essential functions of the employment. Although movant has supported his argument with examples of persons who were injured and returned to work in light-duty positions, such an accommodation does not appear mandatory and the City asserted at the administrative level that there were no vacant positions open for movant's reassignment. As a result, movant's lawsuit does not have a substantial probability of success.

### E. *Conclusion of Appointment of Counsel Analysis*

Movant has shown that he cannot afford an attorney, and that he has made diligent attempts to obtain one. Thus, two of the three factors for appointment of counsel favor him.

However, as noted above, the merits of this case do not indicate a substantial likelihood of success. The ADA does not vest the court with authority to pay appointed coun-

---

1. Plaintiff is simultaneously pursuing an application for social security disability benefits. In order to prevail on his request for benefits, plaintiff must show his disability prevents all substantial gainful employment, a position at odds with the one necessary to prevail in his ADA claim. Although plaintiff believes he may have been able to return to work had he been given earlier therapeutic treatment, he still acknowledges he could not perform his former employment.

sel. Therefore, these facts favor denying movant's motion for appointment of counsel.

### Recommendation

Movant's motion to proceed *in forma pauperis* should be granted.

Movant's motion for appointment of counsel should be denied.

### Objections

Within ten (10) days after receipt of the magistrate judge's report, any party may serve and file written objections to the findings and recommendations of the magistrate judge. 28 U.S.C. § 636(b)(1)(C).

Failure to file written objections to the proposed findings and recommendations contained within this report within ten days after service shall bar an aggrieved party from *de novo* review by the district court of the proposed findings and recommendations and from appellate review of factual findings accepted or adopted by the district court except on grounds of plain error or manifest injustice. *Thomas v. Arn,* 474 U.S. 140, 148, 106 S.Ct. 466, 471, 88 L.Ed.2d 435 (1985); *Rodriguez v. Bowen,* 857 F.2d 275, 276–277 (5th Cir.1988).

SIGNED this 22 day of May, 1995.