Linda DADE, Plaintiff,

v.

**SOUTHWESTERN BELL TELEPHONE COMPANY, Defendant.**

**Civil Action No. 95–0683.**

United States District Court,
S.D. Texas,
Houston Division.

May 30, 1996.

Joel D. Mallory, Houston, TX, for Plaintiff.

Danny Michael Chappell, Tracey Noblitt Ellison, Southwestern Bell Tel. Co., Bellaire, TX, for Defendant.

*MEMORANDUM AND ORDER GRANT-ING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT*

STACY, United States Magistrate Judge.

Before the Magistrate Judge is Defendant Southwestern Bell Telephone Company's ("SWBT") Motion for Summary Judgment (Document No. 15) pursuant to Rule 56 of the Federal Rules of Civil Procedure. On June 9, 1995, the parties consented to trial before United States Magistrate Judge Frances H. Stacy. Pursuant to such consent, United States District Judge Melinda Harmon referred the case for all matters to Magistrate Judge Stacy.

Following a hearing on April 4, 1996,[1] on the motion for summary judgment, and based on a review of the motion, the submissions of Defendant, Plaintiff's Response to the Motion for Summary Judgment (Document No. 19), and the evidence in the record, the Magistrate Judge ORDERS, for the reasons set forth below, that Defendant Southwestern Bell Telephone Company's Motion for Summary Judgment be GRANTED in part and DENIED in part.

## I. Background

On February 5, 1996, Defendant filed its Motion for Summary Judgment, seeking summary judgment on each of Dade's claims: violation of the Americans with Disabilities Act ("ADA" or "Act"), negligent infliction of emotional distress, intentional infliction of emotional distress, and violation of § 451.001 of the Texas Labor Code (retaliatory discharge).

Dade was employed by the Defendant from February 1990 until February 4, 1993, when she was terminated. On December 10, 1992, Dade filed a complaint with the Equal Employment Opportunity Commission ("EEOC") alleging harassment, unwarranted disciplinary citations, discrimination in violation of Title VII based on race, and retaliation for protesting disparate treatment based on race. Plaintiff's Response to SWBT's Motion for Summary Judgment at Exhibit 2.

On December 24, 1992, Dade met with management and her Union Steward to inform them that "she was completely stressed out due to her work situation and that she intended to seek medical treatment." Plaintiff's Response to SWBT's Motion for Summary Judgment at 2. Plaintiff was hospitalized at West Oaks Hospital from December 29, 1992 through January 15, 1993. On the first day of hospitalization, Dade completed the necessary paperwork to receive disability benefits from SWBT. Dade attempted to return to work on January 18, 1993, when she was called into the Union's offices to meet with SWBT and Union representatives. At the meeting, Plaintiff's employment was suspended pending termination, which occurred February 4, 1993.

On April 26, 1993, Dade amended her EEOC complaint with the EEOC to include her February 4, 1993 discharge, alleging that the termination "was an act of retaliation for filing a discrimination charge against the Respondent [SWBT]." Plaintiff's Response to SWBT's Motion for Summary Judgment at Exhibit 2.

Dade filed a second complaint with the EEOC on September 12, 1994, citing the date of filing the complaint as the date of the most recent act of discrimination. The complaint was grounded in the same prejudice, harassment and retaliatory termination alleged in the first and second complaints referring to events in the months of December 1992, January 1993, and February 1993, however, Dade was not employed by the Defendant at the time the second charge was filed. She claimed in the second charge that an attorney "advised [her] that she needed another right to sue letter." Plaintiff's Response to SWBT's Motion for Summary Judgment at Exhibit 3.

Two days later, on September 14, 1994, Plaintiff pursued the remedies available to her as a member of the Communication Workers' Union. According to SWBT and the Union's Collective Bargaining Agreement, a review and arbitration on Dade's case was held on September 14, 1994. Dade

---

**1.** During the course of the April 4, 1996 hearing, counsel offered and the Court hereby admits into evidence Plaintiff's Exhibits A, B, and C and Joint Exhibit D.

received back pay and was reinstated on January 9, 1995. Plaintiff's Response to SWBT's Motion for Summary Judgment at Exhibit 1.

Plaintiff filed her original complaint in this suit on March 7, 1995. On February 5, 1996, Defendant filed its Motion for Summary Judgment, seeking summary judgment on each of Dade's claims.

## II. Summary Judgment Standard

The United States Supreme Court has held that Rule 56 of the Federal Rules of Civil Procedure mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish an essential element of that party's case, and on which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986).

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." FED.R.CIV.P. 56(c). This standard provides that the mere existence of some factual dispute will not defeat a motion for summary judgment. *See Krim v. BancTexas Group, Inc.*, 989 F.2d 1435, 1442 (5th Cir.1993); *Thomas v. Price*, 975 F.2d 231, 235 (5th Cir.1992). Rather, Rule 56 mandates that the fact dispute be genuine and material. *Willis v. Roche Biomedical Laboratories, Inc.*, 61 F.3d 313, 314 (5th Cir.1995). The substantive law determines which facts are material, *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 106 S.Ct. 2505, 2509, 91 L.Ed.2d 202 (1986), and the Court must view these facts and the inferences to be drawn from them in the light most favorable to the party opposing the motion. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587–88, 106 S.Ct. 1348, 1356–57, 89 L.Ed.2d 538 (1986) (citing *United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962)); *Kelley*

*v. Price Macemon, Inc.*, 992 F.2d 1408, 1413 (5th Cir.1993); *Reid v. State Farm Mut. Auto. Ins. Co.*, 784 F.2d 577, 578 (5th Cir. 1986).

The party moving for summary judgment bears the initial burden of showing an absence of evidence to support the non-moving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–27, 106 S.Ct. 2548, 2552–55, 91 L.Ed.2d 265 (1986). Once this burden has been met, the non-moving party can resist the motion for summary judgment by making a positive showing that a genuine dispute of material fact does indeed exist and that it consists of more than bare allegations in briefs and pleadings. *Anderson*, 477 U.S. at 250, 106 S.Ct. at 2511. The non-movant must go beyond the pleadings and designate specific facts showing that there is a genuine issue of material fact for trial. *Celotex*, 477 U.S. at 325, 106 S.Ct. at 2553. "This burden is not satisfied with some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir.1994). Once the parties have submitted evidence of contradictory facts, justifiable inferences are to be drawn in the light most favorable to the non-movant. *Anderson*, 477 U.S. at 255, 106 S.Ct. at 2513.

Even if the standards of Rule 56 are met, a court may deny a motion for summary judgment if, in its discretion, it determines that "a better course would be to proceed to a full trial." *Anderson*, 477 U.S. at 257, 106 S.Ct. at 2514; *Veillon v. Exploration Services, Inc.*, 876 F.2d 1197, 1200 (5th Cir.1989).

## III. Dade's first EEOC charge and subsequent amendment should be barred as a matter of law for failure to comply with 42 U.S.C. § 2000e–5(f) of the ADA.

██ Defendant claims that Dade cannot assert a claim under the ADA because Dade has failed to exhaust her administrative remedies. Specifically, Defendant contends that Dade failed to file an EEOC charge as re-

quired by the Act.[2] Additionally, Defendant argues that Dade has exceeded the 300 day deadline for filing EEOC charges as provided in the Act. However, both the foregoing arguments fail, as Dade has submitted to the Court an EEOC charge filed on December 10, 1992, and an amended EEOC charge filed on April 26, 1993. Plaintiff's Response to SWBT's Motion for Summary Judgment at Exhibit 2. Notwithstanding the foregoing, the Court finds that Dade failed to timely bring the instant suit pursuant to the requirements of the ADA by failing to initiate this suit within 90 days of receipt of her EEOC right-to-sue letter.

■ The ADA has adopted Title VII's procedure for filing charges in employment related claims. *Hilliard v. BellSouth Med. Assist. Plan,* 918 F.Supp. 1016, 1025 (S.D.Miss.1995); *McNeill v. Atchison, Topeka & Santa Fe Railway Co.,* 878 F.Supp. 986, 989 (S.D.Tex.1995). Specifically, the ADA incorporates the "powers, remedies, and procedures" of Title VII of the Civil Rights Act of 1964, as amended by 42 U.S.C. § 2000e–5. *Danese v. Trans Gulf, Inc.,* 1995 WL 498870, 1 (E.D.La.1995). Thus, cases which interpret Title VII are equally applicable to Dade's complaint. *See James v. Texas Dept. of Human Servs.,* 818 F.Supp. 987, 990 (N.D.Tex.1993) (requiring an ADA plaintiff to follow Title VII's administrative requirements).

First, the Act requires a claimant to file a charge with the EEOC within 300 days after the alleged unlawful employment practice. 42 U.S.C. § 2000e–5(e); *Mennor,* 829 F.2d at 554–55 (5th Cir.1987). After filing the EEOC charge, the claimant must wait for a right-to-sue letter from the EEOC. Filing the EEOC charge and receiving the right-to-sue letter comprise an employee's administrative remedies. The purpose of waiting for the right-to-sue letter is to allow the EEOC to investigate complaints and urge voluntary compliance with the law. *Sanchez v. Standard Brands, Inc.,* 431 F.2d 455, 466–67 (5th Cir.1970). As noted by Defendant, settlement is a primary goal of anti-discrimination legislation. Thus, before bringing an ADA suit in federal court, a claimant must exhaust these administrative remedies. 42 U.S.C. § 12117; *National Ass'n of Gov't Employees v. City Pub. Serv. Bd. of San Antonio,* 40 F.3d 698, 711 (5th Cir.1994); *James,* 818 F.Supp. at 990; *Danese,* 1995 WL 498870 at 1.

■ Having filed an EEOC charge, comprising the original charge and the amended charge, and having received a right-to-sue letter, Dade exhausted her administrative remedies, 42 U.S.C. § 12101, and was entitled to bring suit in federal court under the ADA within 90 days of her receipt of the right-to-sue letter from the EEOC. As in Title VII cases, Plaintiff *must* file her complaint within 90 days of receiving the right-to-sue letter, or suit will be untimely. 42 U.S.C. § 2000e–5(f)(1); *St. Louis v. Texas Workers' Compensation Comm'n,* 65 F.3d 43 (5th Cir.1995); *Mooney v. Aramco Services Co.,* 54 F.3d 1207 (5th Cir.1995); *Johnson v. City of Port Arthur,* 892 F.Supp. 835, 839 (E.D.Tex.1995); *McNeill,* 878 F.Supp. at 990; *Sheppard v. Texas Dep't of Transportation,* 158 F.R.D. 592 (E.D.Tex.1994).

■ The 90 day period of limitations begins to run on the date that the right-to-sue letter is delivered to the claimant. *Johnson,* 892 F.Supp. at 839; *Ringgold v. National Maintenance Corp.,* 796 F.2d 769 (5th Cir.1986). In the event of ambiguity as to when notice was given, an employee is presumed to have received the letter within a reasonable time after it was mailed by the

2. SWBT's Reply to Plaintiff's Response to SWBT's Motion for Summary Judgment (Document No. 23) focuses on the allegations that Dade has acted in an untimely manner in bringing her charges and suit, and that Dade's EEOC charges were based on race discrimination under Title VII instead of disability under the ADA. Even the most liberal construction of Dade's EEOC charges fails to encompass an allegation of disability discrimination under the ADA. Nevertheless, as the EEOC could be reasonably expected to investigate whether Dade's disability was a factor causing the discriminatory acts contained in Plaintiff's factual allegations, this Court will construe the EEOC charges to allege a violation of the ADA. Plaintiff's Response to SWBT's Motion for Summary Judgment at 7. *See Sanchez v. Standard Brands,* 431 F.2d 455, 462, 464 (5th Cir.1970) (stating that a liberal construction is accorded EEOC charges, especially those by unlawyered complainants).

EEOC. *McNeill,* 878 F.Supp. at 990; *Roush v. Kartridge Pak Co.,* 838 F.Supp. 1328 (S.D.Iowa 1993) (stating that seven days is considered a reasonable time period where the letter is properly addressed, stamped, and mailed to the address the employee provided to the EEOC). Moreover, defined broadly, a "reasonable time" is construed as when the aggrieved party knows the EEOC has completed its efforts and is not going to bring civil suit on behalf of the claimant. *Johnson,* 892 F.Supp. at 839; *Zambuto v. American Telephone and Telegraph Co.,* 544 F.2d 1333 (5th Cir.1977).

In the instant case, the EEOC sent Dade a right-to-sue letter on August 31, 1993, which encompassed her first charge and the subsequent amendment to the first charge. SWBT's Reply to Plaintiff's Response to SWBT's Motion for Summary Judgment at Exhibit A. Allowing a reasonable mailing period of seven days, Dade's 90 day limitation period would have ended on December 7, 1993. Yet, Dade did not file suit until March 7, 1995. Even if the court were to use the broad definition of reasonable time—Plaintiff's awareness that the EEOC will not be pursuing the claim—and extend the period to Dade's filing of her third EEOC charge, the 90 day limitation would have long since expired.

Based on the foregoing, the Court finds that Dade's filing of the instant suit seeking remedies pursuant to the ADA for her first EEOC charge, and the subsequent amendment to the first charges, is untimely. Therefore, Dade is foreclosed from seeking a remedy in this action on her first and amended EEOC charges due to Dade's failure to comply with the timing requirements of 42 U.S.C. § 2000e–5(f)(1), and summary judgment in favor of Defendant is proper.

**IV. Dade's second EEOC charge should be barred as a matter of law for failure to comply with 42 U.S.C. § 2000e–5(e)(1) of the ADA.**

■ 42 U.S.C. § 2000e–5(e) of the ADA requires a claimant to file a charge with the EEOC within 300 days after the alleged unlawful employment practice.[3] *Mennor v. Fort Hood Nat'l Bank,* 829 F.2d 553, 554–55 (5th Cir.1987). Timely filing is a pre-requisite to maintaining a suit on the claim. *United Air Lines v. Evans,* 431 U.S. 553, 555 & n. 4, 97 S.Ct. 1885, 1887 & n. 4, 52 L.Ed.2d 571 (1977). The Supreme Court has held that the filing requirement is "a requirement that, like a statute of limitations, is subject to waiver, estoppel, and equitable tolling." *Danese,* 1995 WL 498870 at 1, citing *Zipes v. Trans World Airlines, Inc.,* 455 U.S. 385, 393, 102 S.Ct. 1127, 1132, 71 L.Ed.2d 234 (1982); *Young v. City of Houston,* 906 F.2d 177, 180 (5th Cir.1990) (timely filing is subject to equitable tolling); *Coke v. General Adjustment Bureau, Inc.,* 640 F.2d 584 (5th Cir.1981).

■ The 300–day filing period applies regardless of whether state proceedings are timely filed under state or local law. *McNeill,* 878 F.Supp. at 989. Furthermore, the running of the period for filing a discrimination claim is not tolled while the claimant participates in arbitration procedures under a collective bargaining process. *International Union of Electric Radio & Machine Workers, Local 790 v. Robbins & Myers, Inc.,* 429 U.S. 229, 240, 97 S.Ct. 441, 449, 50 L.Ed.2d 427 (1976); *McNeill,* 878 F.Supp at 989. "The Supreme Court has stated that Congress intended to retain other remedies against private employer discrimination separate from and independent of the more elaborate procedures of Title VII." *McNeill,* 878 F.Supp. at 989 (citing *Mennor,* 829 F.2d at 554).

---

**3.** There is some disagreement between and within the circuits as to whether failure to meet the filing requirement acts as a jurisdictional bar or statute of limitations bar to bringing suit. The Fifth Circuit held in 1994 that the necessity of an EEOC charge is jurisdictional. *National Ass'n of Gov't Employees,* 40 F.3d 698, 711 (citing *Tolbert v. United States,* 916 F.2d 245, 247–48 (5th Cir. 1990) (per curiam)). Conversely, the Fifth Cir-

cuit has previously held that a timely filing with the EEOC before bringing a claim of discrimination is "more in the nature of statute of limitations ..." *Young v. City of Houston,* 906 F.2d 177, 180 (5th Cir.1990); *Coke v. General Adjustment Bureau, Inc.,* 640 F.2d 584 (5th Cir.1981). As jurisdiction of this Court has not been placed at issue in the instant matter, this Court addresses the issue as a statute of limitations problem.

According to Defendants, Dade's second charge was not filed with the EEOC within 300 days of the acts she complains of in this suit, and therefore Dade's claim should be dismissed.[4] Dade admits that following a meeting with counsel, she was advised to refile her discrimination charge with the EEOC because she "need[ed] another right-to-sue letter," before she could file suit. Plaintiff's Response to SWBT's Motion for Summary Judgment at Exhibit 3.

■ Dade's second[5] EEOC charge was filed September 12, 1994, and cites the date of filing as the date of the most recent act of discrimination. Plaintiff's Response to SWBT's Motion for Summary Judgment. However, Dade was not employed by the Defendant on September 12, 1994, the date she filed her second EEOC charge. In fact, the second charge alleges the same unlawful employment practices as Dade claimed in her two previous EEOC charges, those acts occurring during December 1992, January 1993, and February 1993. Plaintiff's Response to SWBT's Motion for Summary Judgment at Exhibit 3. Having reviewed the second EEOC charge, the Court finds no new allegation of discrimination sufficient to initiate a new 300 day tolling period. Additionally, even if the Court were to look to the date of the next most recent recorded date of alleged discrimination, February 1993, Dade's filing of the second EEOC charge remains well outside the 300 day time limit prescribed by 42 U.S.C. § 2000e-5(e). Dade cannot circumvent the Act's limitation requirements by simply filing a new charge on the same issues for which administrative and judicial relief have been foreclosed.

Additionally, Dade does not fall within any of the possible exceptions allowing for equitable tolling. Situations which might warrant equitable modification include: (1) when a claimant has received inadequate notice; (2) when a motion for appointment of counsel is pending; (3) when a court has led a plaintiff to believe that he or she has done everything required; (4) when affirmative misconduct by a defendant has lulled a plaintiff into inaction; (5) when a "plaintiff has in some extraordinary way been prevented from asserting his rights;" (6) when a plaintiff "has raised the precise statutory claim in issue but has mistakenly done so in the wrong forum;" (7) when a right to sue letter has been received subsequent to commencement of a Title VII action and while the action is still pending; or (8) when the EEOC or Attorney General has incorrectly refused to issue a right to sue letter.

*Danese*, 1995 WL 498870 at 1, citing *Hladki v. Jeffrey's Consolidated, Ltd.*, 652 F.Supp. 388, 393 (E.D.N.Y.1987). None of these situations is presented in the instant case.

■ First, it is clear from the evidence presented that Dade had notice of the EEOC's decision with respect to her second charge as evidenced by Plaintiff's Exhibit A, admitted into evidence following this court's Hearing on Defendant's Motion for Summary Judgment. Exhibit A is a letter to Dade from the EEOC dated November 16, 1994, in which EEOC declines to reopen her charge. As of the date of this letter, Dade was placed on notice of EEOC's intent not to pursue her second charge further. As such, Dade had 90 days from the date of the letter to file suit on her second charge. Dade did not file suit until March 7, 1995, well beyond the 90 day statutory limit. Second, there is nothing in the record to indicate that a motion for appointment of counsel for Plaintiff was pending, therefore, this factor has no application to this matter. With respect to the third, fourth, fifth, and sixth situations, no evidence has been presented by Plaintiff to suggest that a court has led her to believe she has done everything required, that affirmative

---

4. There is some question as to whether Dade's filling out a "charge information form" is the same as filing a charge with the EEOC. Taking the evidence in a light most favorable to the nonmovant, the Court will assume that by virtue of filling out a charge information form on September 12, 1994, Dade filed a charge with the EEOC as of that date.

5. Dade had previously filed two charges within 300 days of the alleged unlawful acts (an original and an amended charge) and received a right-to-sue letter from the EEOC. As determined above, Dade cannot pursue the discrimination claims at issue in her first and amended EEOC charges due to her failure to file suit within 90 days of receipt of the right-to-sue letter.

misconduct by SWBT has lulled her into inaction, that Dade has, in some extraordinary way, been prevented from asserting her rights, or that she is in the wrong forum. With respect to the seventh situation for which tolling would be available, Dade has failed to produced any right-to-sue letter to this court, whether received before or after the filing of the instant suit. By Order setting a motion hearing on the instant Motion for Summary Judgment, the Court specifically instructed Plaintiff to produce any right-to-sue letter received from the EEOC. However, upon direct inquiry as to the existence of a right-to-sue letter, counsel for Plaintiff was unable to produce a right-to-sue letter. Furthermore, even if the Court was to treat the November 16, 1994 letter from the EEOC to Dade as a right-to-sue letter, the 90 day limitation period established in the Act for bringing suit expired well before Dade filed this suit on March 7, 1995. 42 U.S.C. § 2000e–5(f)(1); *see infra Section III.*

Dade's second EEOC charge presents no new allegations against the Defendant. As stated above, Dade's 300 days for filing an EEOC charge based on the alleged unlawful employment practices in December 1992, January 1993, and February 1993 have expired. Additionally, there has been no evidence produced to indicate that the filing of the instant action is subject to equitable tolling. Dade's attempt to refile and use the second EEOC charge to fulfill her administrative remedies requirement would effectively require this Court to ignore the statutory limitations which have been provided for in the Act, which the Court is disinclined to do. Based on the foregoing, summary judgment is warranted in favor of the Defendant with respect to Plaintiff's second EEOC charge.

## V. Plaintiff's state Law Claims

### A. Texas law does not recognize a cause of action for negligent infliction of emotional distress.

Texas courts do not recognize a cause of action for negligent infliction of emotional distress. *Boyles v. Kerr,* 855 S.W.2d 593 (Tex.1993). Under Texas Supreme Court precedent, a claimant may recover mental anguish damages only in connection with a defendant's breach of some other, recognizable duty. Additionally, in Dade's response, "Plaintiff acknowledges that Texas does not recognize a cause of action for negligent infliction of emotional distress." Plaintiff's Response to SWBT's Motion for Summary Judgment at 8. Based on Texas Supreme Court precedent and Dade's concession regarding negligent infliction of emotional distress, Dade's claim for negligent infliction of emotional distress fails as a matter of law.

### B. Plaintiff's intentional infliction of emotional distress claim fails as a matter of law.

The Texas Supreme Court has identified four elements to the tort of intentional infliction of emotional distress that Dade must prove in order to prevail on her claim:

1. The defendant acted intentionally or recklessly;

2. The conduct was "extreme and outrageous;"

3. The actions of the defendant caused the plaintiff emotional distress; and

4. The resulting distress was severe.

*Wornick v. Casas,* 856 S.W.2d 732, 734 (Tex. 1993); *Twyman v. Twyman,* 855 S.W.2d 619, 621 (Tex.1993). Defendant maintains that Dade cannot produce any competent evidence on any of these elements. In order to grant summary judgment in favor of Defendant, Defendant must prove that no genuine issue of material fact exists as to one of the aforementioned elements. *Wornick,* 856 S.W.2d at 733; *Rodriguez v. Naylor Indust., Inc.,* 763 S.W.2d 411, 413 (Tex.1989).

The outrageous conduct element of an intentional infliction of emotional distress claim was explained by the Fifth Circuit Court of Appeals in *Dean v. Ford Motor Credit Co.,* 885 F.2d 300, 306 (5th Cir.1993) (citing RESTATEMENT (SECOND) OF TORTS § 46):

Liability [for outrageous conduct] has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atro-

cious, and utterly intolerable in a civilized community ... Generally, the case is one in which a recitation of the facts to an average member of the community would lead him to exclaim, "Outrageous."

The court must make the initial determination as to whether, as a matter of law, a defendant's conduct may reasonably by regarded as "extreme and outrageous." *Sebesta v. Kent Elecs. Corp.*, 886 S.W.2d 459 (Tex. App.—Houston [1st Dist.] 1994, writ denied); *Wornick*, 856 S.W.2d at 732.

Dade asserts that, "the act of creating a confrontational environment was outrageous due to Plaintiff's fragile mental state as well as the act of termination ..." and that "... Plaintiff had no doubt that the Defendant was trying to create a vessel for which to fire her." Plaintiff's Response to SWBT's Motion for Summary Judgment at 9. In this regard, Dade cites several cases supporting the argument that repeated ongoing harassment may, in certain circumstances, amount to extreme and outrageous behavior.[6]

*Wilson v. Monarch Paper Company*, one of the cases cited by Dade, demonstrates the level an employer's conduct must reach before it passes out of the realm of an ordinary employment dispute. *Wilson v. Monarch Paper Co.*, 939 F.2d 1138, 1144–45 (5th Cir. 1991). In *Wilson*, the Plaintiff (Wilson) argued that substantial evidence of outrageous conduct existed to support the jury's finding of intentional infliction of emotional distress, including the fact that:

1) his duties in physical distribution were assigned to a younger person; 2) Bisbee deliberately refused to speak to him in the hallways of Monarch in order to harass him; 3) certain portions of Monarch's long-range plans expressed a desire to move younger persons into sales and management positions; 4) Bisbee wanted to replace Wilson with a younger person; 5) other managers within Monarch would not work with Wilson, and he did not receive his work directly from Bisbee; 6) he was not offered a fully guaranteed salary to transfer to Corpus Christi; 7) he was assigned to Monarch's Houston warehouse as a supervisor, which was "demeaning"; 8) Paul Bradley, the Warehouse Manager, and other Monarch managers, referred to Wilson as old; 9) Bradley prepared a sign stating "Wilson is old" and, subsequently, "Wilson is a Goldbrick;" and 10) Monarch filed a counterclaim against Wilson in this action.

The Court found that most of Monarch's conduct was similar in degree to conduct in *Bushell v. Dean*, 781 S.W.2d 652 (Tex.App.—Austin [14th Dist.] 1989, no writ), conduct that failed to reach the level of outrageousness. Specifically, the Court in *Wilson* held

that all of this conduct, except as explicated below, is within the "realm of an ordinary employment dispute," ... and, in the context of the employment milieu, is not so extreme and outrageous as to be properly addressed outside of Wilson's ADEA claim.... [W]hat takes this case out of the realm of an ordinary employment dispute is the degrading and humiliating way that [Wilson] was stripped of his duties and demoted from an executive manager to an entry level warehouse supervisor with menial and demeaning duties.

*Wilson v. Monarch Paper Co.*, 939 F.2d 1138, 1144–45 (5th Cir.1991).

In contrast to the ongoing harassment in *Wilson*, which did reach the level of "extreme and outrageous," in the instant case, Dade merely alleges that Defendant's strict enforcement of the company rules combined with her termination constitutes outrageous conduct. In Dade's affidavit, she elaborates on the specific incidents of "strict enforcement of the rules on Plaintiff at variance with other employees." Plaintiff's Response to SWBT's Motion for Summary Judgment at 10. Dade states: 1) her supervisor would stare at and scrutinize her during her shift; 2) her supervisor paced around her work station; 3) the pacing increased after Dade

---

**6.** *Wilson v. Monarch Paper Co.*, 939 F.2d 1138, 1145 (5th Cir.1991); *Guzman v. El Paso Natural Gas Co.*, 756 F.Supp. 994, 1002–03 (W.D.Tex. 1990); *Sauls v. Union Oil Co. of Calif.*, 750 F.Supp. 783, 789 (E.D.Tex.1990); *American Medical International, Inc. v. Giurintano*, 821 S.W.2d 331 (Tex.App.—Houston [14th Dist.] 1991, no writ); *Bushell v. Dean*, 781 S.W.2d 652, 657–58 (Tex.App.—Austin 1989), rev'd in part on other grounds 803 S.W.2d 711 (Tex.1991).

told the supervisor that it made her uncomfortable; 4) she was reprimanded for drinking coffee without a lid even though nearby employees were also drinking coffee without a lid; 5) her supervisor prohibited Dade from passing out campaign literature for a union position even though other employees were passing out literature; and 6) her supervisor told her that Dade was wasting valuable time because she would make a lousy union representative. Plaintiff's Response to SWBT's Motion for Summary Judgment at Exhibit 1.

Taken as a whole, and assuming Dade's allegations are truthful, the complained of conduct amounts to nothing more than an ordinary employment dispute and, as such, does not comprise extreme and outrageous conduct sufficient to sustain a claim of intentional infliction of emotional distress. Given the level of outrageous conduct necessary to sustain a viable claim of intentional infliction of emotional distress, as outlined by the Texas courts, the Court finds that Dade has failed to present sufficient evidence of outrageous conduct by the Defendant. Thus, as a matter of law, Dade has failed to meet the burden of proof established in *Celotex*, and summary judgment in favor of Defendant is appropriate.

### C. Plaintiff's Texas Labor Code claim presents genuine issues of material fact sufficient to preclude summary judgment.

■ Pursuant to section 451.001 of the Texas Labor Code, employers are prohibited from retaliating against employees who file claims under the Texas Workers' Compensation Act. The employee has the burden to demonstrate a causal link between her claim for worker's compensation and her subsequent discharge. Tex.Lab.Code § 451.002 (Vernon 1995); *Burfield v. Brown, Moore & Flint, Inc.*, 51 F.3d 583, 589–90 (5th Cir.1995) (per curiam); *Parham v. Carrier Corp*, 9 F.3d 383, 386 (5th Cir.1993); *Gauthreaux v. Baylor University Medical Center*, 879 F.Supp. 634, 639 (5th Cir.1994). A plaintiff must produce some credible evidence of her employer's retaliatory motive, but it is not incumbent upon the employee to prove that filing of the claim was the sole

cause for her dismissal. *Thomas v. LTV Corp.*, 39 F.3d 611, 620 (5th Cir.1994); *Gauthreaux*, 879 F.Supp. at 639; *Continental Coffee Products Co. v. Cazarez*, 903 S.W.2d 70, 77 (Tex.App.—Houston [14 Dist.] 1995, no writ); *Acme Boot Co., Inc. v. Montenegro*, 862 S.W.2d 806, 808 (Tex.App.—El Paso 1993). Direct evidence or circumstantial evidence, and the reasonable inferences from such evidence, may be used to establish the casual connection between filing of the workers' compensation claim and the employee's termination. *Burfield*, 51 F.3d at 590; *Continental Coffee Products Co.*, 903 S.W.2d at 77; *Gifford Hill American, Inc. v. Whittington*, 899 S.W.2d 760, 763 (Tex.App.—Amarillo 1995); *Acme Boot Co., Inc.*, 862 S.W.2d at 808. However, an employee's subjective belief that she was terminated in retaliation for filing a compensation claim is not sufficient to support a causal connection. *Continental Coffee Products Co. v. Cazarez*, 903 S.W.2d at 79.

■ Circumstantial evidence is sufficient to establish a causal link between termination and filing of a workers' compensation claim. Such evidence includes: knowledge of the compensation claim by those making a decision on termination; expression of negative attitude toward employee's injured condition; failure to adhere to established company policies; discriminatory treatment in comparison to similarly situated employees; and evidence that the stated reason for discharge was false. *Continental Coffee Products Co.*, 903 S.W.2d at 77–78; *Hinerman v. Gunn Chevrolet*, 877 S.W.2d 806, 808 (Tex.App.—San Antonio 1994); *Palmer v. Miller Brewing Co.*, 852 S.W.2d 57, 61 (Tex.App.—Fort Worth 1993, writ denied); *Paragon Hotel Corp. v. Ramirez*, 783 S.W.2d 654, 658 (Tex.App.—El Paso 1989, writ denied).

In the instant case, Dade claims that "Defendant had knowledge of her claim of injury, displayed a negative attitude toward her injured condition, failed to follow its own policies when it disciplined and ultimately terminated Plaintiff, and treated Plaintiff in a discriminatory fashion when compared to the treatment of other employees with the same disciplinary problem." Plaintiff's Response to SWBT's Motion for Summary Judgment.

While Dade's subjective assertions in her Original Complaint, her Response to SWBT's Motion for Summary Judgment, and the attached Declaration of Linda Dade, alone do not constitute evidence sufficient to withstand summary judgment, a genuine issue of material fact exists as to this claim given the findings of the Arbitrator. During the April 4, 1996 hearing on Defendant's Motion for Summary Judgment, Plaintiff offered and the Court admitted into evidence as Exhibit C, the Award of Arbitrator, *In the Matter of the Arbitration between Southwestern Bell Telephone Company and Communication Workers of America*, Case number 71–300–00237–93. The Arbitrator states:

> The Company, including her supervisors and the Benefits Office, knew of her disability.... First of all, the Company's benefit office had received detailed information concerning the nature of the Grievant's illness and treatment when it authorized placing her on disability leave and paying all of her doctor and hospital bills.

Plaintiff's Exhibit C at 6, 11. The Court finds that the foregoing findings of the Arbitrator raises a genuine issue of material fact with respect to the Defendant's knowledge about the disability upon which Dade's workers' compensation claim was based. Furthermore, the Court finds that a genuine issue of material fact exists as to whether there is a causal connection between compensation and termination, for purposes of the Texas statute prohibiting termination in retaliation for filing a workers' compensation claim. *See Gauthreaux*, 879 F.Supp. at 639. Thus, summary judgment on the § 451.001 state law claim must be denied.

## VI. Conclusion

Based on the foregoing, the Magistrate ORDERS that Defendant Southwestern Bell Telephone Company's Motion for Summary Judgment (Document No. 15) is DENIED in part as regards the state law claim pursuant to § 451.001 of the Texas Labor Code, and is GRANTED in part as regards all other claims.